REDMANN, Judge,
concurring.
Almost all of the circumstantial evidence would as well exist whether the broken outside pipe came first and caused the explosion of the house or vice versa. However, the soil expert gave far less factual support than one would wish for his opinion that lighter-than-air gas travelled sideways in dry, sandy soil from the outside crack to underneath the slab of the house.
It is nevertheless not unfair to conclude, first, (on the principle that a chain breaks at its weakest link) that the 38-foot pipe broke in two at its weakest part. Given the further circumstance that the pipe was connected to the exterior wall by a flexible copper pipe to allow for soil subsidence, it seems reasonable to infer, second, that the twisting force from the wall’s being flattened-only a 90° turn in the first place-would have been diminished rather than transmitted the full 90° at full strength to the pipe, whose 38-foot length of presumably uniform plastic might be expected to withstand (as does an automotive torsion bar) some twisting without breaking. It would not be unreasonable to conclude that the pipe broke rather than twisted because it was defective. It would be a remarkable coincidence that the break, even if not defective, lay precisely atop the rigid electrical conduit. The ultimate conclusions are that the weakest part of the gas pipe-inferentially defective and testified to be defective by one plastics fractures expert-was atop the electrical conduit and was being pressed down across it by the force of soil subsidence. It is not manifestly erroneous to decide that, more probably than not, rather than break from the force of the explosion-flattened wall, the defective pipe had first undergone a crack from the force of subsidence and that crack allowed high-pressure gas to escape through subsurface voids to under the house’s slab and then into the house: that the crack caused the explosion rather than vice versa. Thus I agree with affirming the liability determination.
I also agree that the insurer, expressly subrogated to the insureds’ claim, must recover its full payment as demanded by answer to this appeal, and that, under the pleadings and evidence in this case, the necessary increase of $16,480 to the insurer must be accompanied by a $16,480 reduction in the $100,000 award to the insureds. An apparent professional responsibility problem exists in that both insurer and insureds are represented by the same lawyer, and the two clients’ interests seem to conflict. The insureds’ petition had asked for $165,-000 damages, including $60,000 damages for the “total destruction of house,” $50,000 for the contents, and $15,000 for loss of use, without credit for the portions subrogated to the insurers. Presumably the jury award to the insureds includes at least $60,-000 for those items because the insureds only sued for $40,000 for other items. To allow the insureds to retain that $60,000 for those items and to increase the award to the insurer by $16,480 for its subrogated claim for those same items would oblige the defendant to pay twice.